·NORTHRUP, administratrix, etc., v. TOWN OF PITTSFIELD.

*Town bounties — mandamus — enlistments of non-residents — transfer of credit.*

At a special town meeting held in the town of Pittsfield, January 2, 1864, a resolution was passed that $610 bounty should be paid to every person enlisting " from the town of Pittsfield," as a volunteer in the army, and credited to the quota of that town. Plaintiff's intestate, who resided in another town, enlisted and was credited to the quota of Pittsfield. Said intestate received a certificate of said enlistment and credit from the proper authority, which certificate was presented to the town auditors, and payment of the bounty demanded, in accordance with Laws of 1864, chap. 8. Payment was refused. After intestate's enlistment he was, without his own consent, transferred to the credit of another town. In an action against the town for such bounty, the town set up several grounds of defense.

*Held,* that the plaintiff's remedy was by action and not by mandamus. The rule is well settled that mandamus will only lie to give effect to a clear legal right.

*Held,* also, that although the proceedings before and at town meeting might have been legally defective, the provisions of Laws of 1864, chap. 8, § 1, though passed after such meeting, cured the defects and rendered the action of the meeting valid.

Northrup v. Town of Pittsfield.

The non-residence of the intestate did not affect the liability of the town for the bounty. Neither did the transfer of the credit, without the consent of intestate, to another town.

THIS action was brought to recover the sum of $610, and interest from February 19, 1864, for an alleged indebtedness which, it was claimed, arose under the following facts: Under the call of the president of the United States, in the year 1863, for volunteers to serve as soldiers, on the 2d day of January, 1864, a special town meeting of the voters and citizens of the town of Pittsfield, in the county of Otsego, was convened, at which, by resolution, it was voted that the sum of $610 should be paid to any and every person who should thereafter volunteer as a soldier in the army of the United States from said town, and be allowed on the quota thereof, under the call of the president, to be paid when the volunteer was accepted and mustered into the national service. A committee of five was appointed to carry into effect the resolution aforesaid, and, subsequently, the intestate who, on the 19th of January, 1864, was a resident of Delaware county, through the agency of one Root, a recruiting officer, enlisted, and, on the 19th of February following, was lawfully mustered into the service of the United States, and duly credited to apply upon the quota of men to be raised by the town of Pittsfield, as appears by the certificate of the provost marshal to the foregoing effect. This certificate was indorsed by the intestate to one Charles Maples for payment, was presented to the supervisor of Pittsfield, and afterward by him, as claimed, to the board of town auditors, and payment refused. It also appeared, from the intestate's enlistment papers, certified copies of which were introduced in evidence, that on the 31st of May, 1864, the credit of Northrup was transferred from the town of Pittsfield to the town of Delhi, by order of the paymaster-general. Objections were made, upon the trial, to the admission of the evidence of the proceedings at the town meeting, and a motion was made for a nonsuit on various grounds, and exceptions duly taken to the rulings of the judge. These appear in the opinion.

At the close of the testimony, the court directed the jury to find a verdict in favor of the plaintiff for the amount claimed and interest, $908.91, which was done, and an exception duly taken to the decision of the judge. The counsel for the defendant asked the court to charge the jury that the defendant was entitled to a verdict, which was refused, and an exception was duly taken.

After the action was commenced, the intestate died, and his administratrix was made plaintiff by an order of the court. The cause was tried before Mr. Justice BALCOM and a jury at the Chenango county circuit, March, 1871, and the justice ordered that, upon exceptions being settled, the same be first heard at general term, with a stay of proceedings.

*C. S. Ames,* for plaintiff.

*Jenks & Materson,* for defendant.

MILLER, P. J. The first question which arises upon the facts presented in this case is, whether this action can be maintained against the defendant. It is claimed that the remedy is by mandamus, if any exist at all, in favor of the plaintiff, against the board of town auditors, and not by action against the town in its corporate capacity.

The right of the plaintiff to the amount claimed must depend somewhat upon the construction to be given to the first section of chapter 8, Laws of 1864. By this statute, it is provided that, in cases where a public meeting of the citizens of any town in this State, or the board of town auditors shall be held at, or in pursuance of which moneys shall be raised, borrowed or procured, or voted to be raised, borrowed or procured, or liability incurred, for the enlistment of volunteers, etc., "and such moneys have been paid out and expended, or liability incurred, by or under the direction of any committee, or of any person or persons appointed at such meetings, or by or under the direction of the officers of said town, acting or assuming to act in an official capacity, the moneys so paid and expended, and liability incurred, are hereby declared to be a debt against said town, to be paid with interest. And when a bond, etc., * * * shall have been issued and given by such committee, or person or persons, or officer or officers thus acting, * * * indicating the amount, * * * such bond * * * shall be evidence of the amount of such debt," etc.

If no sufficient bond, etc., shall have been given, then the claim "shall be audited by the board of town auditors of said town, as other claims against the said town are audited, and it shall be the duty of the said board of town auditors to pass upon, audit and settle the same, and to deliver to the claimant a bond" or certificate, etc.

No bond was given or certificate issued to the plaintiff's intestate, in the first instance, showing that he was entitled to the amount claimed. And although the resolution adopted at the town meeting specified the amount to be paid to such volunteers, and with the certificate of enlistment that the intestate was lawfully mustered into the service, made out an indebtedness against the town, yet I think that they did not constitute such a bond or certificate as primarily entitled him, without further proceedings, to the amount claimed. He was bound to go further to maintain his claim, and it was necessary that it should be presented to be audited by the board of town auditors.

As there was evidence that the certificate was presented to the supervisor, and by him to the board of town auditors, and that payment was refused, the intestate had done all that was required, prior to the taking of legal steps to maintain his rights.

I am inclined to think that the refusal and rejection of his claim, by the board of town auditors, did not compel him to resort to a mandamus, inasmuch as the right was not entirely clear, and there was a specific legal remedy to which the party could have resorted. The rule is well settled, that a mandamus will only lie to give effect to a clear legal right. *People* v. *Supervisors of Chenango,* 11 N. Y. 563, 574; *Supervisor, etc., of Sand Lake* v. *Supervisor, etc., of Berlin,* 2 Cow. 485; *People* v. *Croton Aqueduct Board,* 49 Barb. 26, 264.

In the case at bar, there were several questions which were disputed, and presented subjects of controversy — the right of the recruiting officer to make the enlistment; the liability of the town for a volunteer, who resided in a town different from the one named in the resolution; the transfer claimed to have been made of the volunteer to another town, and the regularity of the town meetings, were all questions in dispute, which rendered the claim of the intestate at least doubtful, and, in my opinion, takes the case out of the rule laid down in the authorities, that the right to a mandamus must be entirely clear. The dividing line in the reported cases between the decisions, which sanction this remedy and those which leave a party to his action at law, is extremely close. A careful examination, however, will show that in all the cases relied upon by the defendant's counsel to sustain the doctrine that the remedy in the case now considered was by a mandamus, and not by action, it was entirely apparent that the right to the relief claimed was beyond dispute, where a mandamus was held to be proper. Such is indis-

putably the case where claims exist against counties, and can only be audited by means of the board of supervisors, or against towns or similar organizations, and are required to be presented and credited by the board of auditors. The cases cited by defendant are all of this character. In *People* v. *Town Auditors of Westford,* 53 Barb. 555, it was clear that the relator was entitled to the amount claimed by him from the town, and no question was raised as to there being a remedy by an action against the town. The same remarks are applicable to *People* v. *Martin,* 58 Barb. 286, and the decision there was put upon the distinct ground, that there was no dispute or denial of the facts. The other cases relied upon were decided upon the same principle.

That an action at law will lie for the enforcement of a claim of this character against a town has been held by this court in *Brown* v. *Town of Canton,* 4 Lans. 413, and in *Hathaway* v. *Town of Homer,* 5 id. 273. The principle decided in these cases has not been at all disturbed by the court of appeals, and the question was fairly raised in each of them. It does not affect the question discussed, because the statute required the claim to be presented to the board of town auditors. The amount is liquidated and settled quite as conclusively as if a certificate had actually been given, as was done in *Brown* v. *Town of Canton.* In *Hathaway* v. *Town of Homer,* the demand had never been presented to the auditing board, and I think that no distinction can be made, on this account, where the legality of the entire claim is a subject of dispute   Other cases of a recent date also sustain the doctrine, that the remedy for the enforcement of a liability of a similar character is by action at law.   See *Buck* v. *City of Lockport,* 43 How. 361; *People* v. *Hawkins,* 46 N. Y. 9.   In the last case, which was an application for a mandamus, it was said, upon the appeal, by CHURCH, Ch. J., "It is sufficient to say that the legal right in favor of the plaintiff is far from being clear."

After a careful examination, I am of the opinion that this was not a case for a mandamus, and that the action was properly brought against the town.

Several other objections are urged to the right of the plaintiff to recover in this action. It is claimed that no application was made for, nor notice given of the special town meeting at which the bounty was voted, as required by the Revised Statutes. 1 R. S. 341, §§ 7 and 8. This distinct objection was not taken, either to the admission of evidence or on the motion for a nonsuit, and, there-

fore, is not now available. If it were now presented, I am inclined to think that this formality was dispensed with by the act of 1864, chap. 8, § 1, which provides for "all cases where a public meeting of the citizens of the town" has been convened, and was, no doubt, intended to meet the exigencies of the occasion by disregarding strict rules where meetings had been held prior to the enactment of the law, as was the case here.

The objection urged, that it was not shown that there was a majority of the town present, or that the resolution was adopted by a majority vote, is also unavailable, because the statute does not require that a majority of the electors of the town should be present, and under the law of 1864, it was enough that the resolutions were passed by a majority of those who were present at the meeting.

Although one of the resolutions provided for enlistment "from the town of Pittsfield," I think, the fact that the volunteer resided elsewhere does not preclude his right to the bounty or discharge the town from liability. The papers show that he enlisted at Pittsfield, and was credited to that town. The town received the benefit of his enlistment, and should not be allowed to escape payment upon any such ground. After having been credited upon the quota of the town, with the knowledge and consent of its authorities, it does not rest in the town now to question the power of its agent in procuring enlistments.

The alleged transfer of the intestate to the town of Delhi, without his knowledge or any evidence to establish that he was a party to the same, does not relieve the town from liability. It was primarily liable, and the order of no official can transfer or discharge such liability, without the assent and approval of the volunteer.

There was no request to go to the jury upon any of the facts, and the judge was right in directing a verdict in favor of the plaintiff. There was no error upon the trial. The motion for a new trial must be denied, and judgment ordered in favor of the plaintiff upon the verdict, with costs.

*Judgment accordingly.*